IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

GREG E. HILL,

                Plaintiff,                Case No. 3:06 CV 1639

  -vs-

                                                 MEMORANDUM OPINION

MR. MONEY FINANCE COMPANY,

                Defendant.

KATZ, J.

This matter is before the Court on a motion for summary judgment by Defendants Mr. Money Finance Company ("Mr. Money") and First Citizens Banc Corporation ("First Citizens") (Doc. 43). Also before the Court are the motions of Plaintiff Greg Hill ("Hill") to dismiss Defendants' counterclaim (Doc. 42), to strike certain affidavits (Doc. 49-50), and to strike Defendants' motion for summary judgment (Doc. 53). This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

**I. Background**

In 2000, the CEO of First Citizens was David Voight, the Executive Vice President was Jim Miller, the human resources director was Michael Powell, the compliance officer was Vicky Doski, and its outside legal counsel was Jim McGookey. Working with the Federal Trade Commission (FTC), First Citizens organized Mr. Money as a subprime lender for the purpose of providing loans to customers who would normally not qualify for bank loans because they presented unusual credit risks. First Citizens hired Arthur Pucci to serve as President and COO of Mr. Money and, in April 2000, Hill to serve as senior vice president and second in command. Hill

had extensive work experience with numerous finance companies. Pucci and Hill set up a bonus scheme whereby all loans made by Mr. Money employees were awarded with bonuses, without regard to the quality of the loan. Defendants allege that this bonus structure and other aspects of Pucci and Hill's management cost the company three million dollars over twenty months.

Hill received a base salary of $57,500 per year. He lived in Brunswick, Ohio, and made an arrangement with Pucci whereby Hill would only make the ninety mile drive to the Sandusky office of Mr. Money three days a week. Hill received a car allowance of six hundred dollars per month, and received a mileage allowance as an expense that, according to Defendants, was improperly not reported as income.

On or about December 4, 2001, Hill asked for a meeting with Jim Nabors, a member of Mr. Money's Board of Directors. Hill presented Nabors with information that Hill had acquired which suggested that Pucci had engaged in misconduct, including allegations that Pucci abused the company credit card for over $40,000, made a $3,500 loan to a person with an Ohio address but sent the loan documents to New Jersey, attended a seminar in Florida with a young female employee and her friend, and questionably upgraded a friend's credit score on a $6,500 loan. Nabors relayed the information to CEO Voight, who in turn gave the information to attorney McGookey. McGookey investigated the allegations, then presented his findings to the Board of Directors on December 17, 2001, and Pucci was given, and he accepted, the opportunity to resign. Plaintiff alleges that Nabors said that Pucci was allowed to resign to avoid "waves during this merger," referring to the impending reorganization of the company.

Voight asked Nabors to replace Pucci, at first for a six-month period. As acting president of Mr. Money, Voight replaced the bonus structure, required all employees, including Hill, to work

2

at the Sandusky office every day, and ended Hill's car allowances and sought to replace them with a reportable-income raise of six hundred dollars per month. Defendants allege that Hill was unhappy with his new situation and complained about it to Nabors regularly. According to Defendants, in early 2002 Nabors decided to eliminate the Senior Vice President position which Plaintiff occupied. Around March 10, 2002, Nabors advised Hill that he (Nabors) was asked to officially assume the position of Mr. Money president, an appointment made official on March 18, 2002.

Defendants provide evidence that Plaintiff was unhappy with his employment situation because he wanted a higher salary, did not want to work in Sandusky five days a week, wanted to open and operate a previously-proposed Cleveland office, and was unhappy with the change in the bonus structure. In response to Hill's dissatisfaction, Nabors had sought to connect Hill with other potential employers.

On February 13, 2002, Hill attended a mandatory "Lunch and Learn" session that discussed, among other things, the requirements of filing a Suspicious Activity Report ("SAR"). Hill learned that the company must file SARs in instances of insider abuse involving any amount and falsified information on loan documents. Sometime in March, Hill alleges that he told Nabors about filing an SAR regarding Pucci's conduct, while Nabors recalls only a question about SARs.

On April 12, 2002, Hill sent a letter to Mr. Money's Board of Directors and Doski. The letter noted his December 5, 2001 discussion about Pucci's activities, and advised that Pucci's actions "likely violated a number of state and federal laws and regulations," specifically listed several laws, and characterized Pucci's actions as constituting insider abuse and other felonies.

The letter noted that "failure to report these violations is itself a violation. . . ." Finally, the letter announced Hill's intention to personally file an SAR. Doc. 43, Def.'s Ex. L.

The Board reacted to the letter in various ways. It considered the letter to rest on questionable legal bases: the Board and McGookey determined that not only did the SAR laws apply only to banks and not finance companies such as Mr. Money, but also told Hill that they were prohibited by law from telling him whether an SAR had been filed. They also considered the letter to be factually misleading; they believed that Hill was misstating facts and was incorrect as to what Pucci did and whether his actions constituted reportable offenses. McGookey advised Hill that if he (Hill) felt an SAR should be filed to go ahead and file it.

The Board considered the letter to be threatening and the reasons behind it suspect. They considered Hill to be circumventing the established chain of command, trying to dictate the actions of the Board, and attempting to manufacture litigation. Nevertheless, Doski and McGookey investigated what they considered to be the only actually illegal act by Pucci, the granting of a loan to an Ohioan while sending the documents to New Jersey. Upon calling the U.S. Department of Treasury's Financial Crimes Enforcement Network, Doski was told that an SAR was not required. She received a similar response upon checking with the Federal Reserve Bank.

On April 16, 2002, the Board scheduled a meeting and informed Hill that his position of Senior Vice President was being eliminated pursuant to a February or March decision previously made. He then gave the Board a letter. Notes from Board member Mike Powell reflect that "While this last incident was not appropriate, it is a continuation of unacceptable conduct by [Plaintiff]." Pl.'s Dep. Ex. 21.

Hill filed a lawsuit on or about June 14, 2002 in the Cuyahoga County Court of Common Pleas. He sent an SAR to the FTC on or about June 18, 2002. The case was moved to the Erie County Court of Common Pleas. Another related action was commenced before a court in this District, but was dismissed without prejudice. The case was filed before this Court on July 7, 2006.

**II. Summary Judgment**

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (*quoting* FED. R. CIV. P. 56(e)).

Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, Rule 56(e) "requires the nonmoving

party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324; *see also Harris v. General Motors Corp.*, 201 F.3d 800, 802 (6th Cir. 2000). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

"In considering a motion for summary judgment, the Court must view the facts and draw all reasonable inferences therefrom in a light most favorable to the nonmoving party." *Williams v. Belknap*, 154 F. Supp. 2d 1069, 1071 (E.D. Mich. 2001) (citing *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987)). However, "'at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter,'" *Wiley v. U.S.*, 20 F.3d 222, 227 (6th Cir. 1994) (quoting *Anderson*, 477 U.S. at 249); therefore, "[t]he Court is not required or permitted . . . to judge the evidence or make findings of fact." *Williams*, 154 F. Supp. 2d at 1071. The purpose of summary judgment "is not to resolve factual issues, but to determine if there are genuine issues of fact to be tried." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 130 F. Supp. 2d 928, 930 (S.D. Ohio 1999). Ultimately, this Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see also Atchley v. RK Co.*, 224 F.3d 537, 539 (6th Cir. 2000).

**III. Discussion**

The following statutory language forms the basis for Hill's whistle-blower retaliation claims:

> If an employee becomes aware in the course of the employee's employment of a violation of any state or federal statute or any ordinance or regulation of a political

> subdivision that the employee's employer has authority to correct, and the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation. If the employer does not correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the report, whichever is earlier, the employee may file a written report that provides sufficient detail to identify and describe the violation with the prosecuting authority of the county or municipal corporation where the violation occurred, with a peace officer, with the inspector general if the violation is within the inspector general's jurisdiction, or with any other appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which the employer is engaged.

Ohio Rev. Code § 4113.52(A)(1)(a).

> If an employee becomes aware in the course of the employee's employment of a violation by a fellow employee of any state or federal statute, any ordinance or regulation of a political subdivision, or any work rule or company policy of the employee's employer and the employee reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety, a felony, or an improper solicitation for a contribution, the employee orally shall notify the employee's supervisor or other responsible officer of the employee's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation.

Ohio Rev. Code § 4113.52(A)(3).

> Therefore, to restate, R.C. 4113.52(A)(1) protects an employee for reporting certain information to outside authorities only if the following requirements have first been satisfied: (1) the employee provided the required oral notification to the employee's supervisor or other responsible officer of the employer, (2) the employee filed a written report with the supervisor or other responsible officer, and (3) the employer failed to correct the violation or to make a reasonable and good faith effort to correct the violation. Further, R.C. 4113.52(A)(1)(a) sets forth the sole acceptable manner in which the employee may "blow the whistle" to outside authorities. Specifically, the employee may file a written report that provides sufficient detail to identify and describe the violation with the proper prosecuting authority or other appropriate official or agency with regulatory authority over the employer and the industry, trade or business in which the employer is engaged. An employee who

>fails to follow the specific requirements of the statute is not a protected whistleblower and, accordingly, may not bring a wrongful discharge action pursuant to R.C. 4113.52.

*Contreras v. Ferro Corp.*, 73 Ohio St. 3d 244, 248-49 (Ohio 1995).

>No employer shall take any disciplinary or retaliatory action against an employee for making any report authorized by division (A)(3) of this section if the employee made a reasonable and good faith effort to determine the accuracy of any information so reported, or as a result of the employee's having made any inquiry or taken any other action to ensure the accuracy of any information reported under that division. For purposes of this division, disciplinary or retaliatory action by the employer includes, without limitation, doing any of the following:
>
>>(1) Removing or suspending the employee from employment;
>>(2) Withholding from the employee salary increases or employee benefits to which the employee is otherwise entitled;
>>(3) Transferring or reassigning the employee;
>>(4) Denying the employee a promotion that otherwise would have been received;
>>(5) Reducing the employee in pay or position.

Ohio Rev. Code § 4113.52(B).

>The following provisions apply under federal law.
>
>No financial institution or nonfinancial trade or business may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to the request of the employee) provided information to the Secretary of the Treasury, the Attorney General, or any Federal supervisory agency regarding a possible violation of any provision of this subchapter or section 1956, 1957, or 1960 of title 18, or any regulation under any such provision, by the financial institution or nonfinancial trade or business or any director, officer, or employee of the financial institution or nonfinancial trade or business.

31 U.S.C. § 5328(a).

>No insured depository institution may discharge or otherwise discriminate against any employee with respect to compensation, terms, conditions, or privileges of employment because the employee (or any person acting pursuant to the request of

>the employee) provided information to any Federal Banking agency or to the Attorney General regarding--
>
>>(A) a possible violation of any law or regulation; or
>>(B) gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety;
>
>by the depository institution or any director, officer, or employee of the institution.

Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), 12 U.S.C. § 1831j(a), as amended.

Federal courts have used a version of the traditional Title VII retaliation test that reflects the statutory language to apply § 1831:

>Under this statute, a plaintiff's prima facie burden is to show that his or her whistleblowing was a contributing factor in the retaliatory action(s) taken against him or her. If the plaintiff meets this burden, then the defendant employer must demonstrate by clear and convincing evidence that it would have taken the same challenged personnel action in the absence of the subject disclosure. *Rouse v. Farmers State Bank of Jewell, Iowa*, 866 F.Supp. 1191, 1207 (N.D.Iowa 1994); *Primes v. Parish National Bank*, 1995 WL 241853 (E.D.La.1995). Thus, a trial court reviewing a claim under § 1831j must engage in a two-prong analysis: 1) the plaintiff must establish a prima facie case of retaliation by showing that his or her disclosure(s) were a contributing factor in the adverse employment decision; and if the plaintiff succeeds in establishing his or her prima facie case, then 2) the burden of persuasion shifts to the defendant employer to demonstrate, by clear and convincing evidence, that the challenged employment decision would have been made in the absence of the plaintiff's disclosure(s). *Rouse*, at 1208.
>
> It appears that the burden placed upon the plaintiff in a whistleblowing case is less than the burden traditionally placed upon a plaintiff in a Title VII case; whereas the burden on the defendant employer in a whistleblower case is heightened. *Rouse*, at 1208. This difference is highlighted by the legislative intent behind the Whistleblower Protection Act. The legislative intent behind the WPA in lessening the plaintiff's burden is demonstrated by the fact that all a plaintiff must do is "present evidence that a protected disclosure played a role in or was a contributing factor to the personnel action taken. A contributing factor means any factor which alone, or in connection with other factors, tends to effect, in any way, the outcome of the decision. Any weight given to the protected disclosure, either alone or in combination with other factors, can satisfy the contributing factor test." *Primes v.*

> *Parish National Bank*, *supra.*, *citing* 5 U.S.C. § 1221(e); 135 Cong.Rec. 5033 (1989)*; Marano v. Dept. of Justice*, 2 F.3d 1137, 1140-41 (Fed.Cir.1993); *see*, *Rouse*, at 1208.
>
> The legislative history of the WPA also indicates that in order to meet this lessened burden, a plaintiff, in order to establish his or her prima facie case, "must establish both temporal proximity and actual or constructive knowledge of the defendant of the disclosures at the time of the employment decision to meet the 'contributory factor' test." *Rouse*, at 1209 *citing Wagner v. E.P.A.*, 51 M.S.P.R. 337 n. 6 (1991) (citations omitted).

*Haley v. Fiechter*, 953 F.Supp. 1085, 1093-94 (E.D. Mo. 1997); *Rouse v. Farmers State Bank of Jewell, Iowa*, 866 F.Supp. 1191, 1207 (N.D. Iowa 1994). *See also Simas v. First Citizens' Federal Credit Union*, 170 F.3d 37, 44 (1st Cir. 1999).

Defendants argue that 12 U.S.C. § 1831j does not apply to them because they are not "insured depository institutions;" Plaintiff was not an employee of First Citizens; and the facts do not support whistle-blower claims under sections 1831j and 5328.[1]

Plaintiff argues that the facts support a claim of retaliation for his protected activity; that his actions satisfied the requirements of the state and federal whistle-blower statutes; and that Defendants violated Ohio public policy by firing him.

**A. State law whistle-blower claim**

Here, the first two requirements for Hill's cause of action are met: he provided oral notification of wrongdoing to Nabors, and he also filed a written report later. For Hill to be entitled to protection, Defendants must have failed to correct the reported violation or to make a

---

[1] This Court will assume for the sake of this opinion, that both Mr. Money and First Citizens are covered under FIRREA and § 5328(a), both because the Court feels sufficient discovery has not been conducted to produce enough evidence on the issue, and because assuming otherwise would not affect the outcome of the case as decided herein.

10

reasonable and good faith effort to correct it. Defendants investigated the report, offered and accepted Pucci's resignation, referred the matter to its compliance officer and legal counsel, and contacted two federal agencies to discuss the loan allegation. Defendants determined the other allegations not to be violations of law, and although Hill may have reasonably thought a felony was taking place, per Ohio Rev. Code § 4113.52(A)(3), he has not demonstrated that Defendants failed to take reasonable action to correct the misdeeds as he is required to do by Ohio Rev. Code § 4113.52(A)(1) to establish a cause of action under Ohio whistle-blower law. *See Contreras*, 73 Ohio St. 3d at 248-49.

However, the Ohio statutes go on, somewhat circularly when viewed in light of the above-cited caselaw, to prohibit an employer from terminating an employee for making a good faith, reasonable effort to investigate the accuracy of any whistle-blower information. Ohio Rev. Code § 4113.52(B).

> R.C. 4113.52(B) carries the statute's punch. That part of the statute sets forth what the employer may not retaliate against, and what actions bring about employer liability under the statute. R.C. 4113.52(B) does not require that the information the employee reports is completely accurate as long as "the employee made a reasonable and good faith effort to determine the accuracy of any information so reported." R.C. 4113.52(B) does not exclude the "aware[ness] * * * of a violation" component of R.C. 4113.52(A)(3) from the protection of the "reasonable and good faith effort" requirement.
>
> Thus, if an employee reports to his employer that a fellow employee is violating a state statute and that the violation is a criminal offense and is likely to cause a hazard to public health, each informational component of that report-the violation, the criminality, and the risk to public safety-is "information so reported" under R.C. 4113.52(B). The reporting employee is protected from retaliation as long as he made a "reasonable and good faith effort to determine the accuracy" of each informational element. That necessarily includes information regarding the violation.

*Fox v. Bowling Green*, 76 Ohio St.3d 534, 538 (Ohio 1996).

11

Hill has not established that he put any effort at all into investigating the information alleging Pucci's violations. Defendants point out that Hill was merely a conduit, that he handed over documents that other employees had assembled and gave them to Nabors, but he did not himself investigate the allegations. This Court finds Defendants' argument to be supported by Hill's testimony. Hill testified that it was another employee who gave him information about Pucci's credit charges (Hill Dep. at 247), another employee who printed out every credit-related page that Hill gave to Nabors (Hill Dep. at 249), Hill did not call the auditor regarding the inappropriate credit charges (Hill Dep. at 254), Hill never checked to see who lived at the New Jersey address to which the Ohio loan documents were sent (Hill Dep. at 257), it was another employee who gave Hill the invoices of the resident of the New Jersey address who later turned out to have invoiced Mr. Money for services (Hill Dep. at 258, 263), it was other employees who brought to Hill's attention that Pucci had attended a seminar in Florida with a young female employee and that he helped another friend with her credit score using company money (Hill Dep. at 264-66), that it was others who brought all these allegations to his attention and he did not know about them independently (Hill Dep. at 273), and that this information came to Hill one or two days before he met with Nabors to relay the information (Hill Dep. at 263). This Court finds that there is no genuine issue of material fact as to whether Hill conducted a reasonable, good faith investigation of the allegations – he did not.

Furthermore, to be protected under Ohio Rev. Code § 4113.52(A) as referenced in § 4113.52(B), the plaintiff must have filed "a written report . . . with the proper prosecuting authority or other appropriate official or agency with regulatory authority over the employer and the industry, trade or business in which the employer is engaged." Ohio Rev. Code § 4113.52(A)(3).

12

Hill did not file an SAR with the FTC until after he was fired, and in fact after he filed the underlying retaliation lawsuit. The Ohio Supreme Court has noted that "[a]n employee who fails to follow the specific requirements of the statute is not a protected whistleblower and, accordingly, may not bring a wrongful discharge action pursuant to R.C. 4113.52." *Contreras*, 73 Ohio St. 3d at 248-49. Timing is important in light of the statutory and case law, and Hill's failure to comply specifically with the requirements for protection under Ohio Rev. Code § 4113.52 disqualify him from protection under that section.[2]

For the reasons stated herein, summary judgment is granted in favor of Defendants with regard to Plaintiff's claims under Ohio whistle-blower law.

**B. Federal whistle-blower claim**

Federal law protects employees who file whistle-blower information with "the Secretary of the Treasury, the Attorney General, or any Federal supervisory agency," 31 U.S.C. 5328(a), or "any Federal Banking agency," 12 U.S.C. § 1831j. Hill did not provide such information to the FTC until after Defendants terminated his employment. On the face of the statutes, therefore, he is not protected. However, Hill did inform Nabors and Mr. Money Board members that he intended to file an SAR in March and April of 2002, respectively. Plaintiff argues that such internal whistle-blowing satisfies the liberally-construed reporting requirement under FIRREA.

---

[2] Hill's arguments confuse the multiple "report" requirements of the state statute – initially, "report" does not refer to the sort of filing the submission of which protects the employee from adverse action. Rather, it refers to the primary report the plaintiff must file to begin the process of gaining protection. It is not until after that report is filed and an oral complaint has already been made, and after the employer fails to take reasonable action to correct the violation, that the employee is protected, but only if he files an additional "report," which he has reasonably and in good faith investigated, this time with an outside authority, which Hill did not do before having his position with Mr. Money terminated. *See Contreras*, 73 Ohio St. 3d at 248-89.

Plaintiff argues that "[a]lmost without exception, [courts] have held that the coverage of the statute at issue should be broadly construed so as to include internal, or 'intracorporate' whistleblowing, even where the conduct involved did not come under the literal terms of the statute." *Neal v. Honeywell, Inc.*, 826 F.Supp. 266, 270 (N.D. Ill. 1993). The "statute at issue" was the False Claims Act, 31 U.S.C. 37320(h), which protected those who participate in the "investigation for initiation of, testimony for, or assistance in an action filed or to be filed" under the Act.

> In *NLRB v. Scrivener*, 405 U.S. 117, 92 S.Ct. 798, 31 L.Ed.2d 79 (1972), the Supreme Court held that language in the National Labor Relations Act extended whistleblower protection to an employee who did not meet the literal requirements of the statute. While the statute expressly covered an employee who "has filed charges or given testimony," the Court extended protection to an employee who had given a statement to a NLRB examiner but had neither filed charges or testified at a formal hearing. In so holding, the Court noted that such an interpretation had a long history: the Labor Board had, since 1934, interpreted the language to cover those "giving information relating to violations of the NLRA." *Id*. at 123, 92 S.Ct. at 802 (*citing New York Rapid Transit Corp*., 1 N.L.R.B. Dec. 192 (1934)).

*Neal*, 826 F.Supp. at 270.[3] The Tenth Circuit has found, and the Sixth Circuit has agreed, that internal reports may constitute protected activity based on specific statutory language in the Energy Reorganization Act that was ambiguous and that the Secretary of Labor had interpreted to protect internal reports. *Kansas Gas & Elec. Co. v. Brock*, 780 F.2d 1505, 1510-12 (10th Cir. 1985) (holding that "[assisting or participating in a] proceeding or in any other action" to blow the whistle on his or her employer included filing internal complaints); *Jones v. Tennessee Valley Authority*, 948 F.2d 258, 264 (6th Cir. 1991). *See also Bechtel Constr. Co. v. Secretary of Labor*,

---

[3] It is notable that *Scrivener* did not extend to internal complaints, but interpreted the phrase "filed charges or given testimony under this Act" to include "[giving] a written sworn statement to a National Labor Relations Board field examiner." *Scrivener*, 405 U.S. at 799-800.

14

50 F.3d 926 (11th Cir.1995) (similar holding with regard to similar language in the Atomic Energy Act). Federal courts have also broadly construed language to include and protect internal whistle-blowing in the Clean Water Act, which protects an employee who "has filed, instituted, or cause[d] to be filed or instituted any proceeding under this chapter." 33 U.S.C. § 1367; *Passaic Valley Sewerage Commissioners v. United States Department of Labor*, 992 F.2d 474 (3d Cir.1993). The Fourth Circuit in *Rayner v. Smirl*, 873 F.2d 60, 63-64 (4th Cir.1989) held that the Federal Railroad Safety Act, 45 U.S.C. § 441(a), "which literally covers employees who 'filed any complaint or instituted . . . any proceeding under or related to the enforcement of the Federal Railroad safety laws. . . .' covers internal complaints." *Neal*, 826 F.Supp. At 270-71. *See also Donovan v. Stafford Const. Co.*, 732 F.2d 954 (D.C. Cir. 1984) (broadly construing Federal Coal Mine Health and Safety Act, 30 U.S.C. § 815(c)(1) protection of employee who "has instituted or caused to be instituted any proceeding under or related to this chapter or has testified or is about to testify in any such proceeding"); *Baker v. Interior Board of Mine Operations Appeals*, 595 F.2d 746 (D.C.Cir.1978) (same).

In *Haley v. Retsinas*, 138 F.3d 1245 (8th Cir. 1998), the court extended protection under section 1831j(a)(2), which affords whistle-blower protection to employees of federal banking agencies, to an employee of a federal agency who provided information to an executive of a business under the purview of the agency, which information was then circulated to state and federal regulators. The court interpreted § 1831j(a)(2)'s language that protected "any person acting pursuant to the request of the employee," noting that the information in that case was delivered by the employee to other people who then circulated the information to regulators. *Haley*, 138 F.3d at 1249-50.

15

> This interpretation protects those who provide information about violations of the law to the appropriate authorities, but who try to safeguard themselves by blowing the whistle discreetly–i.e., by "requesting" with a mere suggestion or an implicit understanding. Particularly when the employee's failure to make a direct request is driven by fear of the very conduct the statute proscribes (namely, retaliation), it would be unreasonable to deny the statute's protection once the employee has completed the task the statute seeks to encourage (namely, alerting authorities to possible illegal activity). Our reading of the statute best effectuates the policy Congress sought to achieve in passing it.

*Id.* at 1251. *Haley* did not directly address the protection of employees making internal complaints. In fact, the *Haley* court in a footnote indicated its hesitations with such an extension by astutely noting that:

> The lower court opinion in *Neal*, however, was not the final disposition of that case. *See Neal v. Honeywell, Inc.*, 33 F.3d 860 (7th Cir.1994). On appeal, the Seventh Circuit criticized the district court's broad construction language and balked at the idea that "all statutes should receive the reading most favorable to whistleblowers." *Id.* at 863. The court nevertheless affirmed the district court's decision that the whistleblower statute applied to the plaintiff's situation. *Id.* at 863-64.

*Haley*, 138 F.3d at 1250 n.4.

The differences between the language of the above-discussed statutes and the statute at issue here are glaring. It is apparently true that federal whistle-blower "statutes generally use broad language and cover a variety of whistleblowing activities. Accordingly, when the meaning of the statute is unclear from its text, courts tend to construe it broadly, in favor of protecting the whistleblower." *Haley*, 138 F.3d at 1250. While there is ambiguity in each of the provision that other courts have interpreted to include internal whistle-blowing, section 1831j conspicuously lacks such ambiguity. It provides protection specifically to employees who "provided information to any Federal Banking agency or to the Attorney General." 12 U.S.C. § 1831j(a). Section 5328 protects, again with specificity, employees who "provided information to the Secretary of the Treasury, the Attorney General, or any Federal supervisory agency." 31 U.S.C. § 5328(a).

16

> The first step in statutory interpretation is to look at the text of the statute itself. *See United States v. Talley*, 16 F.3d 972, 975 (8th Cir.1994). If the plain meaning of the language clearly expresses the meaning Congress intended, the judicial inquiry ends there. *See United States v. S.A.*, 129 F.3d 995, 998 (8th Cir.1997), *cert. denied*, 1998 WL 54258 (U.S. March 9, 1998) (No. 97-7733). If, however, the language of the statute is ambiguous, we are obliged to consider "'the purpose, the subject matter and the condition of affairs which led to its enactment.'" *Id*. *(quoting Lambur v. Yates*, 148 F.2d 137, 139 (8th Cir.1945)). "When the meaning of a statute is questionable, it should be given a sensible construction and construed to effectuate the underlying purposes of the law." *S.A.*, 129 F.3d at 998.

*Haley*, 138 F.3d at 1249. The language of sections 1831j and 5328(a) is clear and unambiguous. If the plaintiff did not report the relevant information, himself or through a conduit, to a federal banking agency, the Attorney General, the Secretary of the Treasury, or any federal supervisory agency, before being discharged or otherwise discriminated against with regard to compensation, terms, conditions, or privileges of employment, then the plaintiff is not protected by these whistle-blower protection laws (12 U.S.C. § 1831j and 31 U.S.C. § 5328(a)). Here, Hill, although he had threatened to file an SAR on more than one occasion, and even announced his intent to do so, did not actually file an SAR until after Defendants fired him. He therefore is not entitled to protection under the federal whistle-blower statutes discussed herein. *See Walleri v. Federal Home Loan Bank of Seattle*, 83 F.3d 1575, 1581 n.1 (9th Cir. 1996). It is not necessary for this Court to engage in the burden-shifting analysis discussed above because Plaintiff, by virtue of his failure to file an SAR or other report with an appropriate person or agency, does not qualify for protection under FIRREA's whistle-blower provisions.

Other courts have refused to extend the language of section 1831j. In *Walleri*, the Ninth Circuit denied protection to an employee of an agency not listed in the statute as one whose employees shall be protected. *Walleri*, 83 F.3d at 1581-82 ("[I]t is not for us to cure the deficiency

17

by adding an agency which Congress chose not to–or, in any event, failed to–include."). *See also Nowlin v. Resolution Trust Corp.*, 33 F.3d 498 (5th Cir. 1994). The specificity with which sections 1831j and 5328(a) prescribe the requirements for protection of a whistle-blowing employee may be uncharacteristic of federal whistle-blower statutes in other areas, per the above discussion, but that distinction does not mean that this Court should treat the language of the statutes relevant here as other courts have treated the language of the other statutes – quite the contrary. This Court's ruling satisfies the purpose of FIRREA in encouraging employees to "alert[] authorities to possible illegal activity." *Haley*, 138 F.3d at 1251. It also creates a positive incentive for the reporting of illegal behavior to oversight agencies as opposed to allowing covered entities and disgruntled employees from using the threat of reporting as an internal bargaining chip in whatever disputes may arise among them.

### C. Ohio public policy tort

Plaintiff alleges that Defendants' termination of his employment with Mr. Money was in violation of Ohio public policy as set forth by the above-discussed state and federal statutes and the policy of encouraging the reporting of criminal activity. Plaintiff, again, did not report criminal activity within the corporations to anyone outside of the companies with any authority or oversight over the Defendants' industries until after he was terminated. For the reasons discussed above, his actions do not fulfill the goals of these statutes or of the public policy behind these statutes. Therefore, Plaintiff's claim that his termination violated Ohio public policy is hereby dismissed.

### D. Plaintiff's motion for judgment on the pleadings on Defendants' counterclaim

Defendants brought a counter-claim against Plaintiff under Ohio Rev. Code § 2323.51, Ohio Civ. R. 11, and FED. R. CIV. P. 11, seeking sanctions as a result of the long and tortured

18

history of this litigation (Doc. 2). Plaintiff filed a motion for judgment on the pleadings on the counterclaim (Doc. 42). That judgment is hereby granted, and Defendants' counterclaim is hereby dismissed. Assuming for the sake of argument that the Ohio statutes are applicable in federal court and as independent bases for a counterclaim, this Court finds that the issues that were before this Court, and that it has addressed herein, were not frivolous. They were important substantive issues of federal law. Furthermore, frivolous conduct has not been sufficiently established.

### E. Plaintiff's motions to strike

Plaintiff's motions to strike certain affidavits (Doc. 49, 50) are hereby denied as moot. Plaintiff's motion to strike Defendant's motion for summary judgment (Doc. 53) is also hereby denied as moot.

## IV. Conclusion

For the reasons enumerated herein, Defendants' motion for summary judgment (Doc. 43) and Plaintiff's motion for judgment on the pleadings on Defendants' counter-claim (Doc. 42) are hereby granted. Plaintiff's motions to strike certain affidavits (Doc. 49, 50) and to strike Defendants' motion for summary judgment (Doc. 53) are hereby denied. This case is dismissed.

IT IS SO ORDERED.

  s/ *David A. Katz*
DAVID A. KATZ
U. S. DISTRICT JUDGE